UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LEROY GRESHAM,

      Petitioner,

v.                                                              CASE NO. 6:14-cv-499-Orl-28GJK

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____/

## ORDER

Leroy Gresham ("Petitioner") filed an Amended Petition for Writ of Habeas Corpus

("Amended Petition," Doc. 8) pursuant to 28 U.S.C. § 2254 alleging two grounds for relief.

In both grounds, Petitioner argues that the State court misapplied clearly established

federal law in denying relief as to two claims of his post-conviction rule 3.850 motion of

ineffective assistance of counsel, contrary to the Sixth Amendment of the United States

Constitution. The first claim was based on counsel's failure to investigate an alibi defense,

and the second was based on counsel's failure to move to suppress the identification of

Petitioner based on unnecessarily suggestive procedures by law enforcement. The

Attorney General, State of Florida, and the Secretary, Department of Corrections

("Respondents"), filed a Response to the Amended Petition ("Response," Doc. 24), and

Petitioner filed a Reply to the Response. (Doc. 27). For the following reasons, the

Amended Petition must be denied.

### I.    PROCEDURAL HISTORY

By Information, the State of Florida charged Petitioner with attempted first-degree murder (Count One), robbery with a firearm (Count Two), and possession of a firearm by a convicted felon (Count Three). (Doc. 25-1 at 5-7). During pre-trial proceedings, the trial court held two *Nelson* hearings.[1] The second *Nelson* hearing addressed Petitioner's dissatisfaction with his counsel's failure to file a motion to suppress and to contact his witnesses. (Doc. 25-2 at 8-16). The trial court determined that counsel was not acting incompetently and denied Petitioner's request to discharge counsel. (*Id.* at 16). A month after the second *Nelson* hearing, on February 15, 2008, the Petitioner entered a negotiated guilty plea to all counts, and in exchange, the State agreed to a twenty-five-year sentence. (Doc. 25-1 at 9-10).[2] The trial court sentenced Petitioner to concurrent twenty-five-year terms of imprisonment for Counts One and Two and to a concurrent minimum mandatory three-year term of imprisonment on Count Three. (*Id.* at 11-12). Petitioner did not appeal.

On June 23, 2008, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (*Id.* at 15-25), but after filing an amended Rule 3.850 motion (*Id.* at 27-55), Petitioner voluntarily dismissed his motions. (*Id.* at 57-59). On February 9, 2010, Petitioner filed a second Rule 3.850 motion raising three claims of ineffective assistance of counsel (*Id.* at 64-84), which he supplemented on March

---

1 *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973). If a defendant expresses his desire to discharge his court appointed counsel prior to trial, the trial court will hold a *Nelson* hearing to determine whether there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant.
2 During his plea colloquy, Petitioner initially stated he was not satisfied with his counsel. (Doc. 25-2 at 179). After being informed that the State would be revoking its plea offer, Petitioner stated he was satisfied with his counsel. (*Id.* at 179-180).

2, 2010. (*Id.* at 86-97). On February 21, 2011, the trial court summarily denied the second

Rule 3.850 motion. (Doc. 25-2 at 2-7). Petitioner appealed the denial to the Fifth District

Court of Appeal, which affirmed *per curiam*, "without prejudice to address supplemental

motion." (*Id.* at 158). On August 9, 2013, the trial court denied Petitioner's "Supplement to

motion for post-conviction relief." Petitioner's appeal of this decision was also *per curiam*

affirmed by the Fifth District Court of Appeal.

While the second Rule 3.850 motion was pending, the Petitioner filed a motion to

correct an illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal

Procedure. (Doc. 25-1 at 101-03). The state trial court summarily denied that motion (*Id.* at

110-12), and Petitioner did not appeal.

On February 3, 2014, Petitioner filed his third Rule 3.850 motion. (Doc. 25-2 at 86-

89). The trial court determined that an evidentiary hearing on Petitioner's claim of newly

discovered evidence was necessary. (*Id.* at 95-97). At the conclusion of the evidentiary

hearing, the trial court denied relief. (*Id.* at 99-101). Petitioner appealed, but the Fifth

District Court of Appeal dismissed the appeal for lack of prosecution. (*Id.* at 155).

## II.   LEGAL STANDARDS

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to

a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 413.    Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), *citing Williams*, 529 U.S. at 410.    Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) *(per curiam)*.

4

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.      Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

---

[3] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective

assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those

rules and presumptions, "the cases in which habeas petitioners can properly prevail on

the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*,

13 F.3d 384, 386 (11th Cir. 1994).

### III. ANALYSIS

#### A. Claim One

In his first claim Petitioner alleges trial counsel was ineffective for failing to

investigate his alibi defense. (Doc. 8 at 5). In support of this claim, Petitioner contends

that counsel failed to locate, or communicate with, Petitioner's father, who would have

testified that Petitioner was at his residence the day of the crimes, never left the residence,

and therefore, could not have participated in the robbery and shooting. (*Id.* at 7).

Petitioner raised this claim in both the second *Nelson* hearing and in his second

Rule 3.850 motion. (Doc. 25-2 at 11-12; Doc. 25-1 at 67-69). The trial court denied this claim

in the Rule 3.850 motion, first noting that Petitioner's claim was refuted because he

admitted at the *Nelson* hearing that he did not have his father's address or telephone number. (Doc. 25-2 at 5).[4] The trial court also stated that Petitioner could not demonstrate prejudice because 1) the victim identified Petitioner as the perpetrator in a photographic lineup; and 2) Petitioner told police that he was present at the scene of the crime at the time of the crime. (*Id.*). Because Petitioner admitted to being at the scene of the crime, he could not present a successful alibi defense. (*Id.*). The Fifth DCA affirmed the denial of Petitioner's second Rule 3.850 motion *per curiam*. (*Id.* at 158).

A month after the second *Nelson* hearing, Petitioner entered a guilty plea. (Doc. 25-2 at 177). His plea agreement set forth that he understood that "a plea of guilty admits that I committed the crime(s)." (Doc. 25-1 at 9). Paragraph 14 of the plea agreement, states: **"I have read every word in this plea, have discussed it with my lawyer, and fully understand it. I am fully satisfied with the way my lawyer has handled this case for me. He/she has done everything I have asked him/her to do."** (Emphasis in original). (*Id.* at 10).

During his plea colloquy, Petitioner stated that he had read and understood everything in the plea agreement. (Doc. 25-2 at 178). He understood that by entering the plea, he was waiving or giving up his constitutional rights as enumerated by the trial judge. (*Id.* at 178-179). Additionally, Petitioner told the trial court that he was entering his guilty plea because it was in his best interest to do so. (*Id.* at 179). Petitioner stated

---

4 Six days after the second *Nelson* hearing and twenty-four days before he pled guilty, Petitioner sent counsel his father's address and telephone number. (Doc. 25-1 at 48-49; Doc. 27 at 8).

that he was entering the plea freely and voluntarily, and that no one had coerced him or threatened him. (*Id.*). Specifically, when asked how he wished to plea to Count I – the charge of attempted first-degree murder, Count II – the charge of robbery with a firearm, and Count III – a charge of possession of a firearm by a convicted felon, Petitioner replied "guilty." (*Id.*)

Petitioner was aware at the time he entered his guilty plea that counsel had not contacted his father. Despite this fact, Petitioner stated that he was willingly entering a guilty plea and giving up his constitutional rights. Petitioner's representations to the trial court are presumed true, and Petitioner has not established that the Court should overlook them. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (stating that "the representations of the defendant . . . [at a plea proceeding] constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.").

Moreover, the State gave a factual basis for the plea, which included that the victim identified Petitioner as the perpetrator of the crime. (Doc. 25-2 at 180). According to the State, Petitioner also gave police several versions of what occurred that night, including admitting to being present when the crimes were committed by someone else. (*Id.*).

Petitioner has not demonstrated that but for counsel's actions, he would not have entered the plea and instead would have proceeded to trial. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (when a state prisoner "asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea

bargaining, [federal] cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt.'") (citing *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)).

Although Petitioner states he had an alibi, he cannot show that counsel's failure to contact his father resulted in prejudice. Petitioner's alibi would have been impeached by the victim's identification and Petitioner's own admission to police that he was present when the crimes were committed. Moreover, Petitioner faced a life sentence if convicted at trial. Petitioner made a choice to enter a guilty plea in order to avoid a harsher sentence. The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Claim One is denied pursuant to § 2254(d).

## B.    Claim Two

In this claim, Petitioner contends trial counsel was ineffective for failing to move to suppress the victim's out-of-court identification of him as unnecessarily suggestive. (Doc. 8 at 11). Petitioner states his photograph was the sole photograph depicting a clean-shaven person. (*Id.* at 13). Petitioner raised this claim in the supplement to his second Rule 3.850 motion. (Doc. 25-1 at 86). The trial court summarily denied relief, concluding counsel was not deficient for failing to raise a nonmeritorious issue because the photographic lineup was not unduly suggestive. (Doc. 25-2 at 26). The Fifth District Court of Appeal affirmed *per curiam*. (*Id.* at 158).

Eyewitness identification can violate a defendant's right to due process if the

9

identification procedures were "unnecessarily suggestive and conducive to irreparable mistaken identification." *Manson v. Brathwaite*, 432 U.S. 98, 104 (1977). It is the "likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). Thus the central question is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 199. When evaluating the likelihood of misidentification, courts can consider a number of factors including: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Id.*

The arrest affidavit provides that Detective Cheatham showed the victim a photographic lineup of six men and stated that the photo array may or may not contain a photograph of the suspect. Detective Cheatham attested that the victim "immediately and without hesitation pointed to the photograph of Gresham, as the suspect . . . . As [the victim] looked at the photograph, . . . he became very emotional, to the point of tears. [The victim] was adamant that Leroy Gresham was the suspect. . . ." (Doc. 25-2 at 37).

Petitioner has not provided any evidence that the photographic lineup was unconstitutionally suggestive.[5] The likelihood of misidentification is slim, because the

---

[5] The Court notes that the photo array shown to the victim is not a part of the record.

victim had an opportunity to view the perpetrator of the crime, was extremely certain that Petitioner was the perpetrator, and the identification was made only five days after the victim was shot. (Doc. 25-2 at 37). Although the victim's initial description of the perpetrator was very simplistic—a black male in his mid-20s with short hair, approximately five feet seven inches tall, and 180 pounds—Petitioner has not shown that the victim's description of him was inaccurate. Considering the totality of the circumstances, the Court concludes that the identification was reliable.

Analogous to Claim One, Petitioner was aware at the time he entered his plea that counsel had not filed a motion to suppress the victim's out-of-court identification. Nevertheless, Petitioner told the trial court that he was willingly entering a guilty plea and giving up his constitutional rights. Petitioner's representations to the trial court are presumed true, and Petitioner has not established that the Court should overlook them. *Blackledge*, 431 U.S. at 73-74.

Consequently, Petitioner fails to demonstrate that counsel acted deficiently because a motion to suppress the out-of-court identification would have been unsuccessful. Additionally, Petitioner has not shown prejudice, or that but for counsel's actions, he would not have entered the plea and instead would have gone to trial. As discussed *supra* in Claim One, Petitioner faced a life sentence if convicted at trial. Petitioner made a reasonable choice to enter a guilty plea because it was in his best interest. Petitioner has not shown that his plea was involuntary. The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly

established federal law. Accordingly, Claim Two is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner "makes a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right and is thus not entitled to a certificate of appealability.[6]

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus filed by Leroy Gresham (Doc. 8) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of the Court is directed to enter judgment and close the case.

**DONE AND ORDERED** in Orlando, Florida, on August __8__, 2019.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record
Leroy Gresham
OrlP-3 5/30

---

6 The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Rules Governing Section 2254 Cases in the United States District Courts*, Rule 11(a).